**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| ANASTASIA J.,[1] | § § § | |
| *Plaintiff,* | § § | No. 4:20-cv-2731 |
| v. | § § | |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security | § § § § | |
| *Defendant.* | § § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Anastasia J. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[3] The Parties

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration ("SSA"). Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

[3] On March 10, 2022, the district judge before whom this case is pending referred it for all pretrial purposes pursuant to 28 U.S.C. § 636(b)(1). Order, ECF No. 16. The parties' motions for summary

filed cross-motions for summary judgment. Def.'s MSJ, ECF No. 11; Pl.'s MSJ, ECF No. 12. In support of her motion, Plaintiff asserts that the ALJ did not provide a rationale for her decision and improperly considered the medical evidence when determining Plaintiff's Residual Functional Capacity ("RFC"), including Plaintiff's mental impairments. As a result, Plaintiff claims that ALJ's reliance on the vocational expert's ("VE") testimony based upon the RFC determination does not provide substantial evidence to support the ALJ's decision. Pl.'s MSJ, ECF No. 12. The Commissioner counters that substantial evidence supports the ALJ's determination. Def.'s MSJ, ECF No. 11, Def.'s Reply, ECF No. 13. Based on the briefing, the law, and the record, the Court finds that substantial evidence supports the ALJ's determination and, therefore, recommends that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted.

## I.   BACKGROUND

Plaintiff is 61 years old, R. 19, 60,[4] and completed high school. R. 19, 60, 264. For more than fifteen years, Plaintiff worked as a project accountant. R. 19, 63–65, 264, 279. Plaintiff alleges a disability onset date of May 15, 2016. R. 12, 56. Plaintiff claims she suffers both physical and mental impairments. R. 12, 263.

---

judgment are appropriate for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 9.

On June 6, 2016, Plaintiff filed her application for disability insurance benefits under Title II of the Act. R. 211–212. Plaintiff based[5] her application on arthritis in the lower back from previous radiation treatment, continuous pain in her rectal area from total removal, colostomy, bladder incontinence, stress, and depression. R. 263. The Commissioner denied her claim. R. 108–11.

An initial hearing was held before an Administrative Law Judge ("ALJ") on February 12, 2019, but a continuance was granted for Plaintiff to gather additional medical records. R. 52–78. A supplemental hearing was held on September 18, 2019. R. 27–51. An attorney represented Plaintiff at both hearings. R. 28, 53. Plaintiff testified at the first hearing and a VE testified at the supplemental hearing. R. 29, 54. The ALJ issued a decision denying Plaintiff's request for benefits.[6] R. 10–21. The

---

[5] The relevant time period is May 15, 2016—Plaintiff's alleged onset date—through December 31, 2020—Plaintiff's last insured date. R. 12. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 20. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured ("DLI"). R. 12 (citing 20 C.F.R. 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: history of rectal cancer status post-surgical resection and chemotherapy with residual colostomy and urinary incontinence, mild degenerative disc disease, bilateral plantar fibromas, plantar fasciitis left foot, hypothyroidism, obesity, major depressive disorder, and anxiety disorder. R. 12 (citing 20 C.F.R. 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments that would lead to a disability finding. R. 13–14 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a). R. 14. However, the ALJ added limitations, including that Plaintiff could lift, carry, push, and pull ten pounds occasionally and less than ten pounds

Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits. R. 1.

Plaintiff filed this appeal, challenging the ALJ's analysis, and asks the Court to reverse and award of benefits, or, in the alternative, remand for additional administrative proceedings. Pl.'s MSJ, ECF No. 12. Defendant counters, arguing that the ALJ's findings are proper and supported by substantial evidence. Def.'s MSJ, ECF No. 11; Def.'s Reply, ECF No. 13.

## II.   STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

---

frequently; could stand or walk two hours in an eight-hour day; sit for six hours in an eight-hour day; should not climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or claw; would need to change positions in her work area while performing her job tasks; could learn, understand, remember, and perform complex tasks that are simple and familiar with routine supervision; could interact appropriately with supervisors, coworkers, and the public on a superficial work basis; and could adapt to work situations. R. 14–15. At step four, the ALJ determined that Plaintiff could perform past relevant work as an accountant. R. 18 (referencing 20 C.F.R. 404.1565). At step five, based on the testimony of the VE and a review of the record, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, Plaintiff was also capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including check cashier and payroll clerk. R. 20. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 20.

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza*, 219 F.3d at 393. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be

meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of

engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

In challenging the ALJ's finding that she is not disabled, Plaintiff raises three issues. First, Plaintiff argues that the ALJ did not adequately explain the reasons supporting the RFC determination and instead summarized the medical evidence in violation of Social Security Regulation ("SSR") 96-8p. ECF No. 12 at 4–11. Second, Plaintiff contends that the ALJ's assessment of her mental impairments was erroneous. ECF No. 12 at 12–16. Finally, Plaintiff argues that the ALJ erred in relying on the VE's testimony. ECF No. 12 at 16–18. Defendant counters that the

7

record provided substantial support for the ALJ's RFC finding and the ALJ properly determined that Plaintiff could perform her past relevant work as well as other work existing in significant numbers in the national economy. ECF No. 11 at 5–7; ECF No. 13 at 3–11. The Court finds that the ALJ properly considered the medical evidence when determining Plaintiff's RFC analysis, including Plaintiff's mental impairments. Thus, the VE's testimony relying upon the RFC determination constitutes substantial evidence to support the ALJ's decision.

**A. ALJ Properly Conducted Plaintiff's RFC Analysis.**

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as the most the claimant can still do despite his [or her] physical and mental limitations . . . based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Id.*; 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug. 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an

administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

### 1. The ALJ adequately explained her findings.

Plaintiff argues that the ALJ violated SSR 96-8p because she failed to adequately explain how the medical evidence supports the RFC determination. ECF No. 12 at 4–6. Plaintiff contends that without any real discussion regarding how the ALJ came to determine the RFC, Plaintiff has no way of knowing why certain symptoms were overlooked or why her treating physicians' opinions were disregarded. *Id.* at 6. Defendant counters the ALJ met the requirements of SSR 96-8p when she narratively discussed the medical evidence, symptoms, and opinions about Plaintiff's impairments and assessed her RFC. ECF No. 13 at 6.

The RFC is a combined medical assessment of an applicant's impairments with descriptions from physicians, the applicant, or others of any limitations on the applicants' ability to do work. *White v. Astrue*, No. 4:10-CV-426-A, 2011 WL 4907377, at *4 (N.D. Tex. Oct. 14, 2011) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1998)). SSR 96-8p requires:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must

> discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

1996 WL 37184, at *7.

The ALJ's decision satisfies the narrative discussion requirements of SSR 96-8p. The ALJ's RFC determination pointed to specific, relevant evidence to support her conclusion. *White*, 2011 WL 4907377, at *4; *cf. Carrillo v. Astrue*, No. A-08-CA-774-SS, 2009 WL 4667122, at *10 (W.D. Tex. Nov. 30, 2009) (finding that the ALJ failed to present a narrative discussion, where the ALJ only made a cursory review of the evidence). The ALJ considered Plaintiff's medical records and her reported daily activities. R. 15–18; *see Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.").

In crafting her RFC determination, the ALJ made numerous, specific references to Plaintiff's treatment records. The ALJ noted that objective mental status examinations showed instances of anxious or depressed mood and affect but were otherwise within normal limits.[7] The ALJ also noted that objective physical

---

[7] R. 16 (referencing R. 365 (6/15/16); R. 424 (1/3/17); R. 729 (8/9/16); R. 733 (6/24/16); R. 981 (10/3/17); R. 1014 (10/17/17); R. 1020 (7/24/17); R. 1023 (5/25/17); R. 1029 (4/25/17); R. 1035 (10/24/16)).

examinations showed instances of elevated blood pressure and body mass index, mild paraspinal tenderness, left heel tenderness, and multiple plantar fibromas of the bilateral feet, but were otherwise within normal limits.[8] The ALJ further noted that recent treatment records indicated that Plaintiff's condition improved with treatment.[9]

In addition, the ALJ considered the Plaintiff's activities of daily living, specifically observing that Plaintiff testified that she retained the ability to drive a car, transport herself to the doctor, prepare meals, perform household chores, and independently mange her own self-care. R. 15. The ALJ also noted that Plaintiff reported during her consultation with clinical psychologist Dr. Sandra Durdin that she homeschools her son, cares for her young granddaughter, prepares food, interacts with family and friends, shops and manages money, watches television, has a license and drives, as well as attends events outside of the home. R. 16 (referencing R. 530–31 (6/9/17)).

Moreover, the ALJ considered Plaintiff's symptoms and found that her statements about the intensity, persistence, and limiting effects of her symptoms were only partially consistent with the objective medical evidence. R. 18; *see* SSR 96-8p, 1996 WL 37184, at *7 ("The RFC assessment must include a discussion of

---

[8] R. 17 (referencing R. 365 (6/15/16); R. 423 (1/3/17); R. 424 (1/3/17); R. 981 (10/3/17); R. 1066 (8/8/18); R. 1077 (10/22/18); R. 1133 (6/11/19)).

[9] R. 17 (referencing R. 347 (1/8/15); R. 975 (6/20/17); R. 1050 (4/10/18); R. 1116 (5/22/18)).

why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). The ALJ specified that Plaintiff testified that her main problems related to her back, but diagnostic imaging showed no more than mild spinal findings and physical exams were within normal limits but for instances of tenderness to palpation. R. 18. Additionally, the ALJ recounted that Plaintiff alleged crying spells and the inability to focus due to depression and anxiety, but objective mental status examinations showed normal findings with some instances of depressed or anxious mood and affect. R. 18.

Finally, the ALJ considered and weighed all the medical opinions in the record. R. 15–16; R. 18; *see* SSR 96-8p, 1996 WL 37184, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). In crafting the RFC determination, the ALJ considered the opinions of the psychological consultation examiner, Plaintiff's treating therapist and psychiatrist, and the state agency medical consultants (SAMCs). R. 15–16; R. 18. The ALJ observed that the file for Plaintiff's various mental health providers contained treatment records, medication management, and objective mental status examinations. During the period, Plaintiff received treatment

for various complaints and was diagnosed with major depressive disorder and anxiety disorder. R. 16.

The ALJ gave *some* weight to the opinion of Dr. Durdin, R. 16, who saw Plaintiff on May 31, 2017 for a psychological consultation. R. 529 (6/9/17). Dr. Durdin opined that Plaintiff's ability to understand, recall and carry out simple instructions was not impaired; her ability to handle familiar details was not impaired; she may have mild to moderate difficulty with changing instructions; her ability to sustain attention for two hour blocks of time was mildly impaired; her ability to get along with others in a work setting, including co-workers and supervisors, was mildly impaired; her ability to sustain productivity over a forty hour work week was mild to moderately limited; her anxiety needed to be better contained; her ability to withstand routine demands, pressure or expectations was not impaired for lower demand if her physical health was stabilized; and her ability to participate in management of funds was not impaired. R. 532 (6/9/17). The ALJ found that Dr. Durdin's mild to moderate findings were consistent with and supported by the claimant's activities of daily living, objective mental status examinations in the file, and the lack of documented inpatient mental health admissions or episodes of decompensation during the relevant period. R. 16. However, the ALJ did not directly adopt Dr. Durdin's opinion because her use of non-vocationally defined terms made the opinion too vague. *Id.*

Without much discussion, the ALJ stated that she gave *some* weight to the opinions of Plaintiff's mental health providers, Lucy Rogers, a therapist, and Dr. Duy Tran, a psychiatrist. R. 18.

The ALJ considered the SAMCs opinions. The SAMCs opined that Plaintiff could perform medium work with the following limitations: for physical limitations, Plaintiff could lift and/or carry up to fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for up to six hours out of an eight-hour workday; for mental limitations, Plaintiff could understand, remember, and carry out simple and familiar complex tasks with routine training and supervision; relate to supervisors, peers, and customers on a superficial work basis; and adapt adequately to a work situation. R. 103 (5/1/17); R. 105 (6/14/17). The ALJ found that the SAMCs' opinion on Plaintiff's mental impairments was consistent with and supported by objective findings from the consultative examination and Plaintiff's reported functional abilities, but that their opinion on Plaintiff's physical impairments was inconsistent with the records at the hearing, showing persistent complaints of pain and incontinence and new lower extremity impairments. R. 18. Accordingly, the ALJ gave *great* weight to the SAMCs' opinion on Plaintiff's mental impairments but *little* weight to the SAMCs' opinion on Plaintiff's physical impairments. R. 18.

The evidence the ALJ referenced in the RFC determination is extensive. Accordingly, the ALJ's RFC determination was not inconsistent with the narrative discussion requirements of SSR 96-8p and was supported by substantial evidence.

### 2. *There were no treating physicians opinions which the ALJ was required to give controlling weight.*

Plaintiff further argues that the ALJ failed to properly consider the medical opinions of her treating physicians. ECF No. 12 at 6–8. Plaintiff alleges that the ALJ did not discuss the treating physicians' medical opinions or give them controlling weight. *Id.* at 7. Defendant responds that there were no work-related limitations assessed by a treating source in a medical opinion that the ALJ was required to consider. ECF No. 13 at 3.

Social Security guidelines require adjudicators to consider the opinions of medical sources and apply the factors denoted in regulations when weighing the opinions. SSR 96-5p, 1996 WL 374183;[10] *see* 20 C.F.R. § 1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what

---

[10] "The Social Security Administration's ruling are not binding on this court, but they may be consulted when the statute at issue provides little guidance." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

[the claimant] can still do despite impairments and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In weighing the opinions of medical sources, the ALJ must consider: "(1) the physician's length of treatment of the claimant; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the extent to which the physician's opinion is supported by the medical record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Giles v. Astrue*, 433 F. App'x 241, 248 (5th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)).

The ALJ must afford controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairment when it is well-supported by medical evidence and consistent with other evidence of record. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).[11] However, the ALJ is free to reject the opinion of any physician when the "evidence supports a contrary conclusion," and a treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000) (remanding when ALJ failed to discuss why he gave more weight to non-treating physician's opinion). "Good

---

[11] For claims filed after March 27, 2017, new guidelines have eliminated the requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations); *see* 20 C.F.R. § 404.1520c(a). Because Plaintiff filed her claim on June 6, 2016, the old rule applies.

cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques or is otherwise unsupported by evidence." *Qualls*, 339 F. App'x at 465 (quoting *Newton*, 209 F.3d at 456). When an ALJ rejects the opinion of a treating physician, the Fifth Circuit has held that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in § 404.1527." *Id*.

Plaintiff has not identified which treating providers' opinion she believes were not discussed and given adequate weight. *See* ECF No. 12. Plaintiff points to what the ALJ characterized as "blanket statements" from her mental health providers, which the ALJ gave some weight, as the only instances where the ALJ discussed the weight given to physicians' opinions. *Id.* at 6–7. However, these statements that Plaintiff is or is not disabled are not medical opinions. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The ALJ gave some weight to the letter Plaintiff's therapist wrote. R. 18. Lucy Rogers provided a letter to Plaintiff's administrative counsel, detailing how the Plaintiff's employer treated her and Plaintiff's reaction to that treatment. In her conclusion, she recommended that Plaintiff receive full benefits for early retirement.

R. 716 (12/29/17). This recommendation is not a medical opinion as it did not provide information on Plaintiff's symptoms, her diagnosis and prognosis, and what work-related limitations resulted from Plaintiff's impairments. 20 C.F.R. § 404.1527(a)(2). Instead, Ms. Rogers' conclusion that Plaintiff was entitled to full disability benefits is a finding reserved to the Commissioner and need not be considered. 20 C.F.R. § 404.1527(d)(3); *see Frank*, 326 F.3d at 620; *Whitaker v. Colvin*, No. H-15-2204, 2017 WL 896160, at *19, *25 (S.D. Tex. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 879847 (S.D. Tex. Mar. 6, 2017).

In addition, the ALJ gave some weight to the notes of Plaintiff's psychiatrist, Dr. Tran. R. 18. After an August 23, 2017 follow-up visit, Dr. Tran documented that he "clarified with [Plaintiff] that his previous and current recommendation is that her psychiatric illnesses are not at the severity that would require longterm [sic] disability." R. 1018 (8/23/17). Dr. Tran's statement also is not a medical opinion requiring deference. Dr. Tran's statement includes no discussion of Plaintiff's prognosis or work-related limitations. 20 C.F.R. § 404.1527(a)(2). Instead, Dr. Tran, like Ms. Rogers, made an assessment on Plaintiff's entitlement to disability, a determination reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(3); *see Frank*, 326 F.3d at 620; *Whitaker*, 2017 WL 896160, at *19, *25.

Defendant points out that Plaintiff's treating oncologist,[12] Dr. Derrick Spell, additionally provided a statement in the record. ECF No. 13 at 4. However, unlike the statements of Ms. Rogers and Dr. Tran, the ALJ does not discuss or weigh Dr. Spell's statement when determining Plaintiff's RFC. R. 15–18. Dr. Spell saw Plaintiff on several occasions in 2016 to assess the status of her cancer. R. 751–61 (12/13/16). In his notes from one visit, Dr. Spell wrote, "I do feel the patient should be strongly considered for the short and long-term disability." R. 755 (6/15/16). Dr. Spell's statement similarly does not fall within the definition of a "medical opinion." The statement does not assess any work-related limitations, discuss her prognosis, or describe what Plaintiff can still do. 20 C.F.R. § 404.1527(a)(2). Instead, like Ms. Rogers, Dr. Spell concluded that Plaintiff should be entitled to disability, a finding reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(3); *see Frank*, 326 F.3d at 620; *Whitaker*, 2017 WL 896160, at *19, *25.

No other treating physicians provided statements in the record. Since none of the statements Plaintiff's treating physicians provided fall within the definition of medical opinions, *Phillips v. Berryhill*, No. 3:17-CV-12, 2018 WL 1532382, at *4 (N.D. Tex. Mar. 27, 2018) (quoting *Orange v. Colvin*, 2016 WL 4034798, at *4 (M.D. La. June 14, 2016)) ("Opinions on issues reserved to the Commissioner, like the ultimate issue of disability, are not medical opinions . . . ."), ALJ was not required

---

[12] Defendant incorrectly identifies Dr. Derrick Spell as Plaintiff's hematologist. ECF No. 13 at 4.

to discuss or weigh them when formulating her RFC determination. *Frank*, 326 F.3d at 620 (holding that the ALJ was not required to consider the factors in 20 C.F.R. § 404.1527(d) when the treating physician's opinion is not a medical opinion within the meaning of the regulation). Therefore, the ALJ did not err by not giving these statements controlling weight.

### 3. The ALJ did not cherry-pick the record.

Plaintiff additionally argues that the ALJ improperly "cherry-picked" the record by refusing to discuss evidence that supported her claims. ECF No. 12 at 8–11. Plaintiff contends that because the ALJ did not discuss the evidence, the Court can assume that the ALJ wholly ignored it. *Id.* at 10. Defendant counters that the ALJ acknowledged records that supported Plaintiff's claims as well as records that contracted her allegations of debilitating symptoms. ECF No. 13 at 5.

Although the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, *see Scott*, 770 F.2d at 485, the "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393 (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)). The ALJ must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions

regarding the evidence. *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993).

Plaintiff contends that the ALJ failed to consider or discuss the effects of her subjective symptoms, as well as evidence of the impact of her colostomy bag and mental impairments on her ability to work. *Id.* at 9–11. Plaintiff argues that this is evidence of the ALJ "cherry-picking" the record. However, there is no need for the ALJ to discuss each and every piece of evidence in the record, nor does the ALJ's failure to discuss the evidence establish a failure to consider the evidence. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)); *Bordelon v. Shalala*, No. 94-30377, 1994 WL 684574, at *1 (5th Cir. Nov. 15, 1994). There is no evidence that the ALJ failed to consider these records just because she failed to discuss them in detail in her opinion or that she was "picking and choosing" only evidence that supported her position.

Contrary to Plaintiff's assertion, the ALJ acknowledged and considered the evidence that Plaintiff contends she ignored. The ALJ discussed Plaintiff's subjective symptoms and her need for a colostomy bag. R. 15. The ALJ noted that Plaintiff alleged anxiety and depression with concentration problems and a history of rectal cancer with residual bladder control issues and that she testified that she requires a colostomy bag. *Id.* The ALJ also noted that Plaintiff reported that she could not continuously sit for an eight-hour day, requires a position change every

thirty minutes, could not lift more than ten pounds, frequently trips while walking, and is unable to maintain focus. *Id.* Although the ALJ did not discuss in detail the effects of Plaintiff's colostomy bag and her mental impairments on her functional abilities, the ALJ found that the objective medical evidence only partially supported the alleged severity of her impairments. *Id.* Further, the ALJ credited Plaintiff's testimony and the effects of Plaintiff's colostomy bag and her mental impairments on her functional abilities in the RFC determination when she found that Plaintiff could lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently; could sit for six hours in an eight-hour day; would need to change positions in her work area while performing her job tasks; and could learn, understand, remember, and perform complex tasks that are simple and familiar with routine supervision. R. 14–15. As the trier of fact, the ALJ is entitled to weigh the evidence against other objective findings. *See Walker v. Barnhart*, 158 F. App'x 535, 536 (5th Cir. 2005). Since the ALJ considered both conflicting and supporting evidence when formulating her RFC determination, substantial evidence supports the ALJ's decision.

## B. The ALJ Properly Considered Plaintiff's Mental Limitations in Crafting the RFC Determination.

Plaintiff contends that the ALJ erroneously assessed her mental impairments. ECF No. 12 at 12. First, Plaintiff argues that the ALJ failed to provide a psychiatric

medical expert at the hearing. *Id.* Second, Plaintiff argues that the ALJ erred in having crafted an RFC that failed to properly consider her mental limitations. *Id.*

### 1.    *The ALJ was not required to obtain the testimony of a psychiatric medical expert.*

As part of her argument, Plaintiff contends that the ALJ should have consulted a medical expert with psychiatric experience. *Id.* Plaintiff asserts that without this testimony, the ALJ was left to "play doctor" by interpreting the bare medical record herself. *Id.* (citing *Frank*, 326 F.3d at 622).

"[W]hether to consult a medical expert is generally a matter left to the discretion of the ALJ." *Galloway v. Astrue*, No. H-07-01646, 2008 WL 8053508, at *4 (S.D. Tex. May 23, 2008); *see, e.g.*, *Atkins v. Barnhart*, 119 F. App'x 672, 674 (5th Cir. 2005) ("[T]he regulations do not mandate that the ALJ ask for and consider opinions from medical experts . . . ."); *Haywood v. Sullivan*, 888 F.2d 1463, 1467 (5th Cir. 1989) ("An ALJ requests a [medical expert] to testify when she or he feels it necessary.); *Frank v. Barnhart*, 455 F. Supp. 2d 554, 558 (E.D. Tex. 2006) ("A medical expert's testimony is *required* only in very limited circumstances . . . . Otherwise, the decision whether to utilize a medical expert is discretionary.").[13]

---

[13] A medical expert is required, however, when an ALJ must determine whether a claimant's impairments are equivalent in severity to impairments in the Listings. SSR 96-6p, 1996 WL 374180 ("[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commission on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight [before deciding whether a listing is met or equaled].").

However, even where consulting a medical expert is discretionary, an ALJ is under an affirmative duty to develop the record fully, and where an ALJ's failure to do so results in prejudice to a claimant, remand is warranted. *Carey*, 230 F.3d at 142.

Contrary to Plaintiff's assertion, the ALJ was not left to interpret the bare medical records when formulating the mental limitations in her RFC determination. In addition to the records from Plaintiff's mental status examinations, the ALJ had the assistance of Dr. Durdin's opinion as well as the opinion of the SAMCs. R. 16–18. The ALJ gave some weight to Dr. Durdin's opinion, while she gave great weight to the opinion of the SAMCs. R. 16; R. 18.

Plaintiff argues that the ALJ erred when she relied on the opinion of Dr. Lisette P. Constantin,[14] because Dr. Constantin performed her Mental RFC Assessment for the state agency two years before the administrative hearings and not on a full record. ECF No. 12 at 12 (citing *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)). However, Plaintiff has not identified how the records of Plaintiff's mental impairments changed in the intervening years. While the record contains a few instances in 2019 when Plaintiff self-reported worsening depression and frequent crying spells, R. 1130 (6/11/19); R. 1141 (7/10/19), if Plaintiff believed her condition had changed enough that a new evaluation was required, Plaintiff had the

---

[14] Plaintiff incorrectly identifies Dr. Gerald Dzurik as having performed the Mental RFC Assessment for the statement agency. ECF No. 12 at 12. Instead, Dr. Constantin performed the Mental RFC Assessment. R. 105 (6/14/17). The Court assumes that Plaintiff meant Dr. Constantin.

opportunity to request that the ALJ obtain a medical source statement or otherwise indicate that the record needed additional development at the administrative hearing. However, Plaintiff's administrative counsel did not make these requests. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (when a claimant is represented by counsel at the administrative proceedings, the Commissioner is entitled to assume that he is making his strongest case for benefits); *cf. Wise v. Sullivan*, 101 F. App'x 950, 951 (5th Cir. 2004) (finding no legal error in the hypothetical questions posed by the ALJ to the VE when Plaintiff's counsel had a real opportunity to correct any faults in the ALJ's questioning).

Even so, the ALJ did not rely exclusively on Dr. Constantin's opinion when formulating her RFC determination. R. 16–18. The ALJ also considered Dr. Durdin psychological consultative evaluation. R. 16; R. 529–32 (6/9/17). This is not a case where there were no opinions in the record or the ALJ rejected all the opinions on Plaintiff's mental impairments and formulated an RFC determination based on the bare medical records. *See Deborah S. v. Comm'r of Soc. Sec.*, No. 4:20-cv-1580, 2021 WL 4442514, at *6 (S.D. Tex. Sept. 28, 2021) (holding that the ALJ improperly substituted his lay opinion for that of the medical experts when he discounted all of the medical opinions in the record and formulating an RFC from the raw medical data); *Heather H. v. Kijakazi*, No. 4:20-cv-736, 2021 WL 4138406, at *7 (Sept. 10, 2021) (same); *cf. Michelle G. v. Kijakazi*, No. 4:20-cv-00640, 2021

WL 4034064, at *6 (S.D. Tex. Sept. 4, 2021) (finding that the ALJ failed to gather a fuller interpretation of Plaintiff's mental health issues by not obtaining the testimony of a medical expert after determining that one was necessary). Since the record contained opinions on Plaintiff's mental impairments to which the ALJ gave weight, the ALJ was within her discretion not to consult a medical expert with psychiatric experience.

### 2. *The ALJ included in the RFC those mental limitations supported by the record.*

Plaintiff further contends that the ALJ erred in crafting an RFC that failed to properly consider her mental limitations. ECF No. 12 at 13. Plaintiff argues that her mental limitations are more severe than the ALJ concluded. *Id.*

As the factfinder, the ALJ must "weigh the evidence and . . . incorporate limitations into the RFC assessment that were most supported by the record." *Majkut v. Astrue*, No. 08-CV-92, 2009 WL 3110210, at *8 (N.D. Tex. Sept. 28, 2009) (citing *Muse*, 925 F.2d at 790). Mere presence of an impairment is not enough to establish that one is suffering from a disability. *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1985). A claimant must establish that the impairment is so severe that he or she is "incapable of engaging in any substantial gainful activity." *Foster*, 2011 WL 5509475, at *6 (citing *Anthony*, 954 F.2d at 293). Thus, when an ALJ conducts the RFC findings and limitations, the claimant bears the burden to

establish that his or her impairments result in significant limitations to the potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

In assessing Plaintiff's RFC, the ALJ found that Plaintiff had limitations resulting from her depression and anxiety. Specifically, the ALJ determined that Plaintiff could learn, understand, remember, and perform complex tasks that were simple and familiar with routine supervision; interact appropriately with supervisors, coworkers, and the public on a superficial basis; and adapt to work situations. R. 14–15. There is significant evidence—including Dr. Durdin's evaluation, the SAMCs' assessment, Plaintiff's daily activities, and Plaintiff's treatment records— to support this determination.

As discussed above,[15] the ALJ gave some weight to the opinion of Dr. Durdin and great weight to the opinion of the SAMCs. The ALJ found that Dr. Durdin's findings were consistent with and supported by Plaintiff's reported daily activities, objective mental status examinations in the file, and the lack of documented inpatient

---

[15] *See* § A.1. Dr. Durdin opined that Plaintiff's ability to understand, recall and carry out simple instructions was not impaired; her ability to handle familiar details was not impaired; Plaintiff may have mild to moderate difficulty with changing instructions; her ability to sustain attention for two hour blocks of time was mildly impaired; her ability to get along with others in a work setting, including co-workers and supervisors, was mildly impaired; her ability to sustain productivity over a forty hour work week was mild to moderately limited; her anxiety needed to be better contained; her ability to withstand routine demands, pressure or expectations was not impaired for lower demand if her physical health was stabilized; and her ability to participate in management of funds was not impaired. R. 532 (6/9/17). The SAMCs opined that Plaintiff could understand, remember, and carry out simple and familiar complex tasks with routine training and supervision; relate to supervisors, peers, and customers on a superficial work basis; and adapt adequately to a work situation. R. 105 (6/14/17).

mental health admissions or episodes of decompensation during the relevant period. R. 16. The ALJ found that the SAMCs' opinion was consistent with and supported by objective findings from the consultative examination and Plaintiff's reported functional abilities. R. 18.

Contrary to Plaintiff's assertion that the ALJ's decision lacks any adequate consideration of her testimony concerning her own mental limitations, ECF No. 12 at 14, the ALJ considered that Plaintiff alleged crying spells and the inability to focus due to depression and anxiety. R. 18. However, the ALJ noted that objective mental status examinations showed normal findings with some instances of depressed or anxious mood and affect. *Id.* The ALJ also noted that Plaintiff reported a full range of daily activities. R. 15; R. 16 (referencing R. 530–31 (6/9/17)); *see also* R. 271–74 (7/18/16) (Plaintiff reported depression kept her away from social situations, but also reported a full range of daily activities).

Plaintiff's medical records support the ALJ's RFC determination. As the ALJ found, Plaintiff's mental status examinations were mostly within normal limits with only occasional variations.[16] In addition, Plaintiff's depression and anxiety were tied

---

[16] R. 365 (6/15/16) (Plaintiff alert and oriented and in no apparent distress); R. 424 (1/3/17) (Plaintiff has a normal mood and affect; normal behavior; normal judgment and thought content); R. 429 (12/13/16) (Plaintiff has appropriate mood and affect); R. 542 (5/23/17) (Plaintiff denies confusion, depression, and sleep disturbance); R. 543 (5/23/17) (Plaintiff has normal mood, affect, and judgment); R. 729 (8/9/16) (Plaintiff denies anxiety, depression, confusion, difficulty sleeping, or excessive anger; Plaintiff's mood is normal and affect is appropriate); R. 733 (6/24/18) (Plaintiff's speech and behavior are normal); R. 736 (8/3/16) (Plaintiff's speech and behavior are appropriate); R. 981 (10/3/17) (Plaintiff has a normal mood and affect; normal behavior; normal

to the treatment she received at her workplace and her anxiety about returning there, rather than the act of working itself.[17] In fact, Plaintiff reported that if she was denied disability benefits, she would go back to work. R. 1014 (10/17/17).

Therefore, substantial evidence supports the mental limitations included in the ALJ's RFC determination.

## C. Substantial Evidence Supports the ALJ's Step Four and Five Findings.

Plaintiff claims that having erred in making a faulty assessment of her RFC, the ALJ further erred by relying on the testimony of the VE in response to hypothetical questions based on that flawed RFC. ECF No. 12 at 17. Plaintiff argues

---

judgment and thought content); R. 992 (7/18/17) (same); R. 1017 (8/23/17) (Plaintiff's mood is good; thought process is organized and logical; denies obsessive thoughts, delusions, homicidal ideations, suicidal ideations, hallucinations, or illusions); R. 1020 (7/24/17) (same); R. 1023 (5/25/17) (same); R. 1032 (12/21/16) (same); R. 1061 (6/7/18) (Plaintiff has a normal mood and affect; her behavior is normal); R. 1072 (9/17/18) (same); R. 1077 (10/22/18) (same); R. 1082 (10/29/18) (Plaintiff has appropriate mood and affect); R. 1091 (1/22/19) (Plaintiff's mood and affect are normal; her behavior is normal; her judgment and thought content are normal); R. 1116 (5/22/18) (Plaintiff's mood, affect, and judgment are normal); R. 1125 (11/19/18) (Plaintiff's mood and affect are normal; her behavior is normal; her thought content is normal); R. 1133 (6/11/19) (Plaintiff's mood and affect are normal; her behavior is normal; her judgment and thought content are normal); *cf.* R. 1014 (10/17/17) (Plaintiff exhibited worsening anxiety); R. 1029 (4/25/17) (Plaintiff exhibited worsening depression); R. 1035 (10/24/16) (Slight improvement in mood and anxiety but overall Plaintiff still appeared overwhelmed).

[17] R. 276 (7/18/16) (Plaintiff reported depression and stress from job due to illness and missing work); R. 436 (9/26/16) (Plaintiff stated she does not think she will be able to return to work based on the stress it creates); R. 444 (7/14/16) (Plaintiff reported extensive work-related stress); R. 530 (6/9/17) (Plaintiff reported she was afraid to tell employer she had to go to the doctor); R. 715 (12/29/17) (Plaintiff stated she wanted to be back at work in a place that does not criticize her or challenge her to miss doctor's appointments or follow-up visits); R. 1020 (7/24/17) (Plaintiff stated she would like to return to work); R. 1032 (12/21/16) (Plaintiff felt she could return to work; described hostile working environment and preference for a new job); R. 1034 (10/24/16) (Plaintiff gets upset whenever she talks about work and her employers); R. 1036 (8/8/16) (Plaintiff reported being stressed mostly at work).

that because of the errors in the RFC determination, the questions the ALJ posed to the VE were faulty and the VE's testimony was unreliable. *Id.* Defendant argues in response that the VE's testimony constitutes substantial evidence for the ALJ's step four and five finding. ECF No. 11 at 6; ECF No. 13 at 10–11.

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a VE's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *see also Biestek*, 139 S. Ct. at 1155 ("[A] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data.").

Here, the VE testified that a person with Plaintiff's age, education, past work experience, and RFC could perform Plaintiff's past relevant work of accountant (step four) as well as the jobs of check cashier and payroll clerk (step five). R. 19–20; R. 39–40. Because the Court finds that substantial evidence supports the limitations included in the ALJ's RFC determination, the VE's testimony relying upon the RFC determination constitutes substantial evidence to support the ALJ's decision at steps four and five. *See Okert v. Colvin*, No. 4:15-cv-00435, 2016 WL 1266966, at *15

(S.D. Tex. Mar. 31, 2016) (dismissing argument that the ALJ's step five determination was tainted by inaccurate evaluations of Plaintiff's RFC and her credibility where the ALJ did not err in evaluating Plaintiff's RFC or her credibility).

## V. CONCLUSION

The Court **RECOMMENDS** that Plaintiff's motion for summary judgment, ECF No. 12, should be **DENIED**, and Commissioner's motion for summary judgment, ECF No. 11, should be **GRANTED**. The decision of the Commissioner should be **AFFIRMED**, and this case should be **DISMISSED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

SIGNED at Houston, Texas, on March 31, 2022.

**Dena Hanovice Palermo**
**United States Magistrate Judge**